# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KING ANTHONY ALVAREZ,     :
    *Plaintiff,*     :
                     :
    v.            :     CIVIL ACTION NO. 24-CV-3127
                     :
CITY OF PHILADELPHIA, *et al.,*    :
    *Defendants.*     :

## MEMORANDUM

**Pappert, J.**                                              **July 31, 2024**

     *Pro se* Plaintiff King Anthony Alvarez sues the Department of Housing and Urban Development ("HUD"), the City of Philadelphia, and two non- profit organizations — the Tenant Union Representative Network ("TURN") and Community Legal Services ("CLS") — in connection with the termination of his subsidized housing benefits. Alvarez also seeks leave to proceed *in forma pauperis*, for an emergency hearing, for injunctive relief, and for the appointment of counsel. For the following reasons, the Court will grant Alvarez leave to proceed *in forma pauperis*; deny his requests for legal counsel, an emergency hearing, and injunctive relief; and dismiss his Complaint.

I[1]

     Alvarez is currently homeless. (Compl. at 5, ECF No. 2.) He alleges that his homelessness constitutes an "emergency regarding the HUD lawsuit" he previously filed in this Court. (*Id.* at 7.) The Court understands Alvarez to reference his prior

---

[1] The Complaint consists of the Court's standard form complaint and five additional handwritten pages. The Court adopts the pagination supplied by the CM/ECF docketing system.

lawsuit where the Court dismissed his Amended Complaint against HUD, TURN, and the City of Philadelphia, including claims asserted under the Fair Housing Act, based on allegations that in November of 2022, Alvarez was terminated from a TURN-funded housing program in retaliation for his filing the lawsuit. *See Alvarez v. HUD*, No. 22-3631, 2022 WL 17252193, at *3 (E.D. Pa. Nov. 28, 2022). Alvarez appealed the dismissal order to the Third Circuit Court of Appeals, but the case was dismissed for failure to prosecute. *See Alvarez v. HUD*, No. 22-3282, 2023 WL 3721398, at *1 (3d Cir. Feb. 7, 2023).

In this Complaint, Alvarez states that after unsuccessful efforts to obtain relief in the state courts, he "want[s] to refile this case as a Fair Housing Case in Federal Court." (*Id*. at 7-8 ("I have been filing and filing and filing and filing and filing at Phila Court of Common Pleas. Every single time I am getting denied.").) He again states that the claims arose in November of 2022.[2] (*Id*. at 4.) Unlike in his last case, in this one he alleges that evidence — in the form of a Zoom video — supports his FHA claims.[3] (*Id*. at 4, 8) Specifically, he alleges that during a "1.5 hour long zoom meeting" — the date of which he does not disclose — Defendants the City of Philadelphia, HUD, and TURN were "lying to terminate [him]." (*Id*. at 8.) Alvarez further alleges that Defendants mentioned his fair housing complaint during the Zoom meeting. (*Id*.) Alvarez now reasserts "fair housing" claims in this Court because "CCP is not working."

---

[2] In this case, Alvarez states that the events giving rise to his claims occurred on November 15, 2022. (Compl. at 4.) In his prior case, he stated that on November 15, 2022, TURN sent him a letter indicating that he would be terminated from the housing program effective December 31, 2022. *See Alvarez v. HUD, et al*., No. 22-3631 (E.D. Pa.), at ECF No. 23 at 18.

[3] On July 24, 2024, Alvarez sent the Court a letter including a link to the Zoom video, purportedly maintained in his personal iCloud account. (ECF No. 12.)

(*Id*. at 10.)  Alvarez alleges that he has "complex PTSD from being neglected by the City for an entire decade" and that "just because [he] complain[s] doesn't mean [he] should be wrongfully terminated from a life-sustaining rental assistance program."  (*Id*.)

Alvarez states that he sues HUD because HUD "had a duty . . . to maintain [his] right to fair housing," and that despite an email from the Director of HUD in Philadelphia stating that he would follow up on the matter, Alvarez was "still wrongfully terminated."  (*Id*. at 11.)  He further states that he sues CLS because they "chose to appoint [him] a person working on their undergrad to represent [him]" who also had a conflict of interest.  (*Id*.)  For relief, he asks the Court to order the City of Philadelphia to place him in a hotel "until [he] is re-housed" while this case proceeds.  (*Id*. at 5, 9.)

## II

The Court grants Alvarez leave to proceed *in forma pauperis* because it appears that he is unable to pay the costs for filing this lawsuit.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the pro se] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice.  *Iqbal*, 556

U.S. at 678.  Because Alvarez is proceeding *pro se*, the Court construes the allegations of the Complaint liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).  However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'"  *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F. 3d 239, 245 (3d Cir. 2013)).

"With respect to affirmative defenses, such as *res judicata*, dismissal is proper if application of the defense is apparent on the face of the complaint; [the Court] may also look beyond the complaint to public records, including judicial proceedings." *Weinberg v. Scott E. Kaplan*, LLC, 699 F. App'x 118, 120 n.3 (3d Cir. 2017); *Gimenez v. Morgan Stanley DW, Inc.*, 202 F. App'x 583, 584 (3d Cir. 2006) (*per curiam*) (observing that "*[r]es judicata* is a proper basis for dismissal under 28 U.S.C. § 1915(e)(2)(B)").

III

The Court understands Alvarez to assert FHA retaliation claims against the City of Philadelphia, HUD, TURN, and CLS, based on allegations that he was terminated from a rental assistance program in retaliation for filing a fair housing complaint.  The FHA "prohibits housing discrimination on the basis of, inter alia, race, gender, and national origin."  *431 E. Palisade Ave. Real Est., LLC v. City of Englewood*, 977 F.3d 277, 283 (3d Cir. 2020); *see also* 42 U.S.C. § 3604(b).  The Fair Housing Amendments Act ("FHAA"), which was adopted by Congress in 1988, extended FHA protections to individuals with disabilities.  *Id.*; *see also* 42 U.S.C. § 3604(f).

The FHA's anti-retaliation provision makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section . . . 3604 . .

. of this title." 42 U.S.C. § 3617. The regulations associated with § 3617 make clear that the section prohibits acts directed at individuals "because of" their membership in a protected class. 24 C.F.R. § 100.400(c)(2) (listing prohibited conduct to include "[t]hreatening, intimidating or interfering with persons in their enjoyment of a dwelling *because of* the race, color, religion, sex, handicap, familial status, or national origin of such persons" (emphasis added)); *see also Frazier v. Rominger*, 27 F.3d 828, 833 (2d Cir. 1994) (stating that § 3617 "safeguards members of the protected class from coercion, intimidation, threats, or interference in the exercise or enjoyment of their Fair Housing Act rights"). Prohibited acts under § 3617 include retaliating against individuals who report discriminatory housing practices or participate in an FHA proceedings. *See* 42 U.S.C. § 3617; 24 C.F.R. § 100.400(c). "To prevail on a § 3617 retaliation claim, a plaintiff must demonstrate that (1) []he engaged in a protected activity; (2) the defendant subjected [him] to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Lloyd v. Presby's Inspired Life*, 251 F. Supp. 3d 891, 904 (E.D. Pa. 2017).

The Court understands Alvarez to allege that he was terminated from his subsidized housing in November of 2022. (*See* Compl. at 4 (stating that the event giving rise to his claim occurred on November 15, 2022).) In his 2022 lawsuit, he alleged that he was terminated from the subsidized housing program on November 12, 2022. If the termination Alvarez refers to in this case is the same as the one from his 2022 case, which it appears to be despite minor discrepancies, then any FHA retaliation claim based on that termination would be barred by claim preclusion. "Claim preclusion — which some courts and commentators also call *res judicata* — protects

defendants from the risk of repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits." *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021) (internal quotations omitted). Claim preclusion prevents parties from raising issues that could have been raised and decided in a prior case regardless of whether those issues were litigated. *Id.* In other words, "[t]he prior judgment's preclusive effect . . . extends not only to the claims that the plaintiff brought in the first action, but also to any claims the plaintiff could have asserted in the previous lawsuit." *Id.* at 231-32. With few exceptions, claim preclusion applies where new claims are based on new evidence. *See Haefner v. N. Cornwall Twp.*, 40 F. App'x 656, 658 (3d Cir. 2002) (*per curiam*) ("Claim preclusion, however, applies even where new claims are based on newly discovered evidence, unless the evidence was either fraudulently concealed or it could not have been discovered with due diligence.").

Three elements are required for claim preclusion to apply: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Marmon Coal Co. v. Dir., Office Workers' Compensation Programs*, 726 F.3d 387, 394 (3d Cir. 2013) (internal quotation marks omitted). "A dismissal under the *in forma pauperis* statute . . . qualifies as an adjudication on the merits carrying preclusive effect for purposes of any future *in forma pauperis* actions raising the same claim." *Gimenez*, 202 F. App'x at 584. With regard to the second element, claims against individuals who were not parties to the prior lawsuit may be precluded in certain circumstances, including when there is a

substantive legal relationship between the party and nonparty.  *Taylor v. Sturgell*, 553 U.S. 880, 893-94 (2008).

Assuming that Alvarez's FHA retaliation claim is based on the same termination from TURN-funded housing in November of 2022, then the elements of *res judicata* are satisfied.  Alvarez's 2022 lawsuit (Case No. 22-3631) resulted in a final judgment on the merits of his FHA claims in that lawsuit.[4]  *See Alvarez*, 2022 WL 17252193, at *4 (stating that all federal claims, including claims under the FHA will be dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(3)(2)(B)(ii)).  With the exception of CLS, the 2022 lawsuit involved the same parties:  HUD, TURN, and the City of Philadelphia.[5]  *Id*.  Finally, the 2022 lawsuit included an FHA retaliation claim based on Defendants' alleged November 2022 termination of Alvarez's subsidized housing.  *Id*.  Although Alvarez presents new evidence in support of his FHA retaliation claim (the Zoom meeting recording), this evidence does not affect the prior action's preclusive effect.  *Haefner*, 40 F. App'x at 658.  Accordingly, Alvarez's 2022 lawsuit (Case No. 22-3631) precludes Alvarez from asserting an FHA retaliation claim in this lawsuit.[6]

---

[4] The 2022 lawsuit also involved state law claims that were dismissed for lack of subject matter jurisdiction.  *See Alvarez*, 2022 WL 17252193, at *4.  The Court need only consider the FHA claims in considering whether *res judicata* applies to the claims asserted in this lawsuit.

[5] Alvarez's FHA claims against CLS are specious at best.  CLS allegedly represented Alvarez during the Zoom meeting.  There are no allegations that CLS was responsible for the termination of his subsidized housing.  Nor are there any allegations from which the Court can discern a plausible basis for a FHA (or any other) claim against CLS.

[6] Moreover, although Alvarez includes no facts about his state court proceedings against the Defendants named in this lawsuit, except to state that they were all "denied," (*see* Compl. at 7), it is possible that those proceedings also preclude FHA retaliation claims asserted in this case.  *See Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 548 (3d Cir. 2006) (stating that where the prior litigation occurred in Pennsylvania courts,

Even if Alvarez's FHA retaliation claim is somehow based on a separate subsidized-housing termination, the claim would still fail.  The FHA is a federal anti-discrimination statute intended to address discriminatory housing practices targeting members of specific protected classes.  *See Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mount Holly*, 658 F.3d 375, 381 (3d Cir. 2011) ("The FHA can be violated by either intentional discrimination or if a practice has a disparate impact on a protected class."); *Mitchell v. Cellone*, 389 F.3d 86, 87 (3d Cir. 2004) ("The Fair Housing Act was designed to provide nationwide fair housing to minorities who had previously been victims of invidious racial discrimination.").  Alvarez does not allege that he was discriminated against nor that he was a member of a protected class.  This is fatal to any FHA claim, including any FHA retaliation claim.  *See, e.g.*, *Davis v. Rubin*, No. 20-6271, 2020 WL 7624833, at *3 (E.D. Pa. Dec. 22, 2020) (dismissing FHA interference and retaliation claims on screening where plaintiff does not link alleged harassment to "her exercise or enjoyment of a right under the FHA" and does not allege a protected activity involving complaints about discrimination); *Kris v. Dusseault Fam. Revocable Tr. of 2017*, No. 18-566, 2019 WL 4647211, at *3 (D.N.H. Sept. 24, 2019) (noting that retaliation claim includes proof of membership in a protected class); *Kendrick v. Greenburgh Hous. Auth.,* No. 07-5859, 2011 WL 1118664, at *9 (S.D.N.Y. Mar. 22, 2011) ("Filing complaints . . . and even less formal means of protest such as letter writing . . . constitutes "protected activity" under the FHA *if* it is lodged in protest of

---

the federal district court "must give the same preclusive effect to the judgment in [a] common pleas court case that the courts in Pennsylvania, the state in which the judgment was entered, would give").  At this time, the Court lacks sufficient information to make that determination.

statutorily prohibited discrimination." (emphasis in original)).  In other words, even if

Alvarez's FHA claims were not barred by claim preclusion, they fail on their merits.

IV

For the foregoing reasons, the Court grants Alvarez leave to proceed *in forma*

*pauperis* and dismiss his Complaint.  In light of Alvarez's *pro se* status, the Court will

allow him to file an amended complaint if he can allege facts to cure the defects the

court has noted as to claim preclusion and the elements of an FHA retaliation claim.  In

addition, Alvarez's request for e-filing privileges is denied as unnecessary, because he

may file electronically using the Court's Electronic Document Submission (EDS) tool

available on the Court's website, and his request for appointed counsel is premature

and denied without prejudice.  *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in

determining whether appointment of counsel is appropriate, the Court should first

determine whether plaintiff's lawsuit has a legal basis).  Finally, Alvarez's emergency

motions for a hearing and to be temporarily housed in a hotel, which the Court

construes as requests for a temporary restraining order or a preliminary injunction

under Federal Rule of Procedure 65, are denied.[7]

---

[7] Alvarez filed an "Emergency Motion to Meet with Judge Pappert on July 7/17/24 or ASAP" (ECF No. 3), an "Emergency Motion to be Placed in a Hotel Until Rehoused" (ECF No. 4), and an "Emergency Motion" to "allow this case to move forward" (ECF No. 5).  The Court understands Alvarez to seek preliminary injunctive relief under Rule 65.  A preliminary injunction or a temporary restraining order "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotations omitted).  At a minimum, a plaintiff seeking relief under Rule 65 must show that he is likely to succeed on the merits of his claims. *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019); *see also Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

An appropriate Order follows.

BY THE COURT:


**_/s/ Gerald J. Pappert_**
**Gerald J. Pappert , J.**

---

Although the Court sympathizes with Alvarez's predicament, Alvarez is not likely to succeed on the merits of his FHA claims for the reasons set forth in this Memorandum.